# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4954 | **DATE** | 8/31/2004 |
| **CASE TITLE** | PINPOINT INC. vs. AMAZON.COM, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for claim construction [111-1] is granted in part and denied in part. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | SEP 01 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | **170** |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 8/31/2004 | | |
| CB | courtroom deputy's initials | | date mailed notice | | |
| | | | PW | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PINPOINT INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 4954 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| AMAZON.COM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

**SEP 0 1 2004**

## MEMORANDUM OPINION AND ORDER

Pinpoint Incorporated ("Pinpoint") sues Amazon.com, Inc., Babiesrus.com, LLC, Borders

Group, Inc., Borders, Inc., BeMusic, Inc. (incorrectly identified as CDnow, Inc.), Egghead.com,

Inc., Target Corporation, Toys "R" Us, Inc., Toysrus.com, Inc., Virgin Group Ltd. and Walden

Book Company, Inc. (incorrectly identified as Walden Books, Inc.)(collectively, "Amazon") for

patent infringement pursuant to 35 U.S.C. § 271 *et seq.*[1] Amazon counterclaims for a declaration

of non-infringement and invalidity. Amazon moves for construction of the disputed claims.

## BACKGROUND

Pinpoint is a Texas corporation that owns several United States patents, including Nos.

5,758,257 ("the '257 patent"), 6,088,722 ("the '722 patent"), and 5,754,939 ("the '939 patent").

Amazon is a Delaware corporation with its principal place of business in Seattle, Washington.

Amazon sells, *inter alia*, books, music and DVDs on its website. According to Pinpoint,

Amazon's website contains technology providing personalized book and music video

---

[1] The co-defendants are Amazon's merchant affiliates. Def. Mem. at 1-2.

1

suggestions for customers. Compl. at ¶¶ 27-28. Pinpoint contends Amazon's personalization technology infringes the '257, '722, and '939 patents.

The '257 and '722 patents are related and have virtually identical specifications and the same title: "System And Method For Scheduling Broadcast Of And Access to Video Programs And Other Data Using Customer Profiles." The '257 patent has 95 claims; the '722 patent has 27 claims. The '257 and '722 patents differentiate prior art systems and disclose an invention that assists customers in finding video and cable programs and other broadcast data without any active participation or "channel-surfing" by creating "customized programming channels" or "virtual channels." The channels are created by comparing profiles of available video and cable programs and other broadcast data with a customer's profile reflecting programming preferences. The virtual channel is continually updated to reflect a customer's current preferences by comparing the programming recommended by the virtual channel to the programming actually watched by the customer.

According to Pinpoint, Amazon and its co-defendants are infringing '257 claims 17, 41 and 43; and '722 claims 1, 3, 4, 6 and 7. Pinpoint concedes the preferred embodiment of the '257 and '722 patents concern "access to cable TV programs." Nevertheless, Pinpoint contends the patents also encompass other embodiments, including one for "home shopping . . . implemented in a kiosk or personal computer designed to assist [customers] in the selection of movies, music, books, and the like." Pl. Opp. Mem. at 2 (citing '257 at 8:13-21; '722 at 8:21-36). Pinpoint uses these embodiments to challenge Amazon's personalization technology as infringing the '257 and '722 patents. But according to Amazon, its website merely informs users, "based on aggregate sales correlations, that customers who previously bought a product the

2

user chose to view or buy also bought another product." Def. Mem. at 3-4. Amazon contends that Pinpoint's inventions fit the framework of "content-based information filtering," while Amazon's website uses "collaborative filtering," a competing, non-infringing technology that existed when the '257 or '722 patents were filed.[2] Put another way, Amazon claims Pinpoint – by its claim construction – overreaches the scope of its "content-based information filtering" patent to cover "collaborative filtering."

The '939 patent differs from the '257 and '722 patents. It contains 22 claims and is titled "System for Generation of User Profiles For A System For Customized Electronic Identification of Desirable Objects." The '939 patent differentiates prior art systems and discloses an invention to aid users, as opposed to customers, in retrieving electronic materials, such as electronic news, and perhaps physical materials, including purchasable goods, with minimal effort in "electronic media environments." The invention is designed to more accurately and efficiently search for and retrieve items while simultaneously reducing the time and energy users typically expend in finding relevant materials. These materials are compiled by predicting what "target objects" [news articles or purchasable goods] are of interest to a user. Predictions are generated based on matching a user's summarized preferences with available target objects. The invention contains an updating feature that modifies a user's summarized preferences to reflect any changes in a user's interest in specific target objects.

Pinpoint contends Amazon and its co-defendants infringe claims 1-7 of the '939 patent. Pinpoint suggests the '939 patent applies to Amazon's website because it "identif[ies] both

---

[2] According to Amazon, content-based filtering works through representations as to content, *e.g.*, a western or a romance movie, while collaborative filtering works through social relationships, *i.e.*, recommendations that inform users of other users' purchases.

physical and electronic items of interest" to users. Pl. Opp. Mem. at 1-2. Amazon responds that

Pinpoint's flawed construction applies the '939 patent to its website by "separat[ing] the claims

from the patents." Def. Mem. at 5.

## DISCUSSION

### I.  LEGAL STANDARD

Claim construction is an issue of law. To construe a claim, the court must first look to

intrinsic evidence: ". . . the patent itself, including the claims, the specification, and if in

evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583

(Fed. Cir. 1996). The court must begin with the plain language of the claims. *York Prods., Inc.*

*v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). Claim terms must

be given their ordinary and accustomed meaning. *Johnson Worldwide Assoc., Inc., v. Zebco*

*Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). Next, the court examines the patent specification,

which contains a written description of the invention that should be clear and complete to enable

a person of ordinary skill in the art to make and use the invention. *Vitronics*, 90 F.3d at 1582.

The specification is "always highly relevant to the claim construction analysis" and "is usually

dispositive; it is the single best guide to the meaning of a disputed term." *Id*. Dictionaries may

be examined to determine the ordinary and accustomed meaning of claim terms. *Teleflex, Inc. v.*

*Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). Extrinsic evidence is

examined only when the patent and its prosecution history do not provide a clear answer.

*Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1302 (Fed. Cir. 1997). The accused device is not

considered when determining the scope of the claims. *Young Dental Manufacturing Company,*

*Inc. v. Q3 Special Products, Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997).

## II.    CLAIM CONSTRUCTION

### A. '257 and '722 patents

Pinpoint alleges Amazon infringes '257 patent claims 17, 41 and 43, and '722 patent claims 1, 3, 4, 6 and 7. The parties agree the '722 patent is a continuation in part of the '257 patent, and that the '257 and '722 patents have virtually the same specification and overlapping claim terms. The parties agree that as to each patent, the disputed claims share identical terms. Construction of identical claim terms in the '257 and '722 patents is the same. *CVI/Beta Ventures v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997); *Hemphill v. Proctor & Gamble, Co.*, 85 Fed. Appx. 765, 767 (Fed. Cir. 2004).

### Preamble to '257 and '722 Asserted Claims

The parties dispute the construction of the preamble to '257 patent claims 17, 41, 43 and '722 patent claims 1, 3, 4, 6, and 7. The first asserted claim in which this preamble language appears is Claim 17, providing "[a] method of scheduling customer access to data from a plurality of data sources, comprising the steps of[.]" Def. Mem. Ex. 1, Col. 55. The key phrases in dispute are "scheduling customer access" and "data from a plurality of data sources."

Amazon asserts "scheduling customer access" is a claim limitation that means "assigning the days and time slots when a customer will be given access." Amazon directs the court to a broadcasting definition and the patent specification. According to Amazon, "scheduling" means "to assign a start time and duration to a broadcast program or data element." Def. Mem. at 11-12 (citing ATSC Standard: Delivery of IP Multicast Sessions over ATSC Data Broadcast (Advanced Television Systems Committee, Doc. A/92, 1/31/2002)). Amazon contends the patent specification confirms the applicability of this definition: "The introduction of time dimensions

makes possible the scheduling of video programs, *i.e.*, the assignment of programs to days and to time slots in accordance with each customer profile." Def. Mem. at Ex. 1, Col. 22:10-13. Pinpoint disagrees and argues this term is not a claim limitation subject to claim construction. Alternatively, Pinpoint advances a broader definition: "selecting and/or ordering . . . the information that will be provided to the customer." Pinpoint's alternative construction relies on the IBM Dictionary of Computing and the Merriam-Webster Dictionary, which provide respective definitions of "scheduling" as "to select jobs or tasks that are to be dispatched," and "to appoint, assign, or designate for a fixed time." Pl. Opp. Mem. at 10.

The Federal Circuit instructs that the claim preamble is deemed part of the claim that may be interpreted if it "recites limitations of the claim" or is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999). Contrary to Pinpoint's position, the preamble should not be ignored; it is vital to the meaning of the claim. At a minimum, the phrase "scheduling customer access" instructs what is to be done with the "data from a plurality of data sources," *i.e.*, that data is scheduled for a customer's access. In the absence of the preamble, this is unclear. Instead, the claim language describes the customer profiles, the content profiles, and the method by which customer profiles are updated to better reflect the content profiles of the monitored data sources without reference to the requisite scheduling.

However, Amazon's proposed construction of "assigning the days and time slots when a customer will be given access to the data" must be rejected. Neither the claim language nor the specification are this restrictive. While Amazon is correct that the specification discusses "scheduling" as "the assignment of programs to days and to time slots in accordance with each

6

customer profile," this discussion solely refers to the preferred embodiment of the patented

invention. Amazon cannot use a preferred embodiment to limit the claim language to the field of

broadcasting. *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1327 (Fed.

Cir. 2003). Neither '257 patent claims 17, 41, 43 nor '722 patent claims 1, 3, 4, 6, and 7 appear

limited to broadcast scheduling embodiments. These claims use broad terms such as "data,"

"data source," and "data objects." *Compare* Def. Mem. Ex. 1 at Col. 55, Claim 17 ("a method

for scheduling customer access to *data* from a plurality of data sources") *with* Col. 55, Claim 18

("a method of scheduling customer access to video *programs*"), and Col. 61, Claim 48 ("[a]

system as in claim 45, further comprising means for transmitting said content profiles to each

customer along with electronic *program* guide data for upcoming *television* viewing periods").

In this regard, the patent specification's discussion of non-broadcasting embodiments is

instructive. *See, e.g.*, Def. Mem. Ex. 1 at Col. 1 ("The present invention relates to a system and

method for *controlling* . . . customer access to data")(emphasis added); Col. 4 ("In accordance

with the invention, a method of scheduling customer access to data from a plurality of data

sources is provided. . . .[T]he technique of the invention may be applied to match customer

profiles for such disparate uses as *computerized text retrieval*, music and music video selection,

*home shopping selections*, infomercials, and the like") (emphasis added); Col. 50 ("a music or

book kiosk to aid in the selection of music or books").[3] Each of these non-broadcasting

embodiments suggest "scheduling" includes broad "ordering" of customer access to data, not just

---

[3] In its reply, Amazon summarily argues that another patent, U.S. Pat. No. 6,020,883 ('883), covered the kiosk embodiment, and that neither '257 nor '722 patents should be construed as covering the kiosk. This argument must be rejected. Amazon's motion for claim construction fails to include a complete copy of the '883 patent for the court's consideration. *See* Def. Reply. at 1 (no attachment included).

narrow "assigning" of "days and time slots." Accordingly, the court construes "scheduling customer access" to mean "selecting and/or ordering . . . the information that will be provided to the customer."

Amazon's proposed construction of "data from a plurality of data sources" is similarly flawed. Like "scheduling customer access," Amazon narrowly defines "data" and "data source" with reference to purported standard definitions in the field of telecommunication and data broadcasting. According to Amazon, a "data source" is defined as "equipment that supplies data for transmission" in telecommunications, and "refers to the provider of data that is being inserted into a data stream" in data broadcasting. Def. Mem. at 14 (citing Dictionary of Telecommunications, at p. 59, S.J. Aries (Butterworths Scientific, 1981); ATSC Data Broadcast Standard, p. 8 (Advanced Television Systems Committee, Doc. A/90, 7/26/2000)). Amazon's proposed construction of "data" and "data source" distinguishes cable or satellite channels from the specific programs on those channels; a data source is a channel such as HBO or the Sci-Fi Channel, and data is a program on the channel such as Six Feet Under or Star Trek. Put another way, Amazon argues that "[t]he claim language requires a data source that is . . . a specific feed or channel for which a content profile can be created." Id. at 15.

In contrast, Pinpoint broadly defines "data" as "information" and "data source" as "a source of data." Pl. Opp. Mem. at 11 (quoting IBM Dictionary of Computing at 164 as defining "data" as a "representation of facts or instructions in a form suitable for communication, interpretation, or processing by human or automatic means. Data includes constants, variables, arrays, and character strings" or "information"). As Pinpoint suggests, a broad definition of "data" and "data source," with the latter including examples such as Six Feet Under or Star Trek,

finds support in the claim language and patent specification. None of the asserted claims of the '257 patent [claims 17, 41, and 43] discuss "equipment" or "a cable or satellite channel." Rather, the claim language instructs that specific content profiles will be created for each data source and/or that specific data sources will be monitored to determine what was accessed by the customer. *See* Def. Mem. at Ex. 1, Col. 55, Claim 17 ("creating content profiles for each data source"); Claim 41 ("monitoring which data sources are actually accessed by each customer"); Claim 43 ("creating content profiles for each data source"). Amazon's contention is untenable that a program, such as Star Trek, is the "data" for which a content profile is created based on its time slot position on a "data source," such as Sci-Fi Channel. The plain language requires "creating content profiles for each data source of said data," not creating content profiles for the data on each data source." *See* Def. Mem. at Ex. 1, Col. 55, Claim 17. Nor does Claim 43 doom Pinpoint's proposed construction; this particular claim must contemplate multiple programs. Otherwise, neither Amazon's nor Pinpoint's proposed construction is correct. *Compare* Def. Reply at 2 ("data" is a "program") *with* Def. Mem. Ex. 1, Col. 55, Claim 17 ("presenting said *subset of data* to said customer for selection") (emphasis added).

Moreover, the patent specification supports a broader construction. For example, the specification details the creation of a content profile for a program such as Star Trek – a "data source" – in which its characteristics with respect to romance, high-tech, and violence are represented. Def. Mem. at Ex. 1, Col. 21. Other examples, such as references to real estate, similarly support a broader construction of "data source." Amazon's proposed construction cannot be reconciled with the claim language or the specification. *Vitronics*, 90 F.3d at 1583.

Accordingly, the court construes "data" to mean "information" and "data source" to mean "a source of data."

### '257 patent: Claim 17

The parties dispute the construction of the body of Claim 17, which provides in relevant part:

> [1] creating at least one customer profile for each eligible recipient of said data, said customer profile indicating the customer's preferences for data having predetermined characteristics;
>
> [2] creating content profiles for each data source of said data, said content profiles indicating the degree of content of said predetermined characteristics in data from each data source;
>
> [3] monitoring which data sources are actually accessed by each recipient; and
>
> [4] updating, without input from each customer, each customer profile in accordance with the content profiles of the data sources actually accessed by that customer to automatically update each customer's actual preferences for said predetermined characteristics.

Def. Mem. Ex. 1, Col. 55.[4]

### Step 1

The parties proffer differing constructions of Step 1, which provides "creating at least one customer profile for each eligible recipient of said data, said customer profile indicating the customer's preferences for data having predetermined characteristics." Amazon narrowly construes "customer profile indicating the customer's preferences for data having predetermined characteristics" as "a list of mathematical values indicating the customer's preferences for predetermined characteristics that describe the content of data." Def. Mem. at 16. Amazon relies

---

[4] The court discusses claim 17 in four separate steps. The parties dispute the proper construction of claim terms in each of these steps.

on a general purpose dictionary, its expert witness, and the patent specification. Amazon

generally defines "profile" as "a formal summary of analysis of data, often in the form of a graph

or table, representing distinctive features or characteristics." Def. Mem. at 16 (quoting The

American Heritage Dictionary of the English Language (4th ed. 2000)). Amazon then submits its

expert witness' declaration that "[i]n the specific field of these patents, information filtering,

customer profile is understood to mean the user profile in an information filtering system that

indicates a user's preferences for characteristics of the content of the items being filtered . . . as a

numerical value for a corresponding characteristic in the user and item profiles." Def. Mem. at

16 (citing Resnick Decl. at ¶ 59). Amazon contends the patent specification confirms this

construction: "The content profiles and the customer profiles are thus described as a collection of

mathematical values representing the weighted significance of several predetermined

characteristics of the video programming." Def. Mem. at 16, Ex. 1, Col. 10.

Unlike Amazon, Pinpoint proffers separate constructions for each key term in the phrase

"customer profile indicating the customer's preferences for data having predetermined

characteristics." According to Pinpoint, "customer profile" means "a set of information related

to a specific customer that describes significant characteristics of the customer;" "indicating the

customer's preferences for data having predetermined characteristics" means "the customer

profile points out or shows indirectly the customer's preferences for certain kinds of information

or items of interest;" and "predetermined" means "the characteristics are established before the

system practices the method claimed." Pinpoint relies on the IBM Dictionary of Computing and

the Merriam-Webster Dictionary, which provide respective definitions of "profile" as "data that

describes the significant characteristics of a user, a group of users, or one or more computer resources" and "indicate" as "to point out" or "to show indirectly."

The parties' disputed claim construction primarily focuses on whether customer profiles use mathematical values to express customer preferences. Amazon asserts that "[mathematical] constructs are core to what is described as the invention," while Pinpoint counters that Amazon is "just limit[ing] the claim terms to the preferred embodiment." Neither the plain language of the asserted claims nor the patent specification supports Amazon's proposed construction of "customer profile" as a "mathematical construct." Unlike other '257 patent claims, the plain language of Pinpoint's asserted claims do not reveal a narrow "mathematical construct." *Compare* Def. Mem. at Ex. 1, Col 52, Claim 1 ("relating said selected customer profile with the content profiles for the data available from each data source to the customer at a particular time by determining a distance between a customer profile and a content profile in a characteristic space by calculating an agreement scalar for common characteristics, ac, between said selected customer profile, cv, and said content profiles, cp, in accordance with the relationship . . . ") *with* Claim 43 ("relating said at least one customer profile with the content profiles for the data available from each data source to the customer"). The existence of narrower claims requiring application of specific mathematical equations is suggestive of a broader construction of the term "customer profile" in the asserted claims of the '257 and '722 patents. *Arlington Industries, Inc.*, 345 F.3d at 1327.

Nor is the court persuaded by Amazon's insistence that "customer and content profiles are sets of numbers associated with the same set of characteristics." Def. Reply at 3. *See also* Def. Mem. at 18 ("The patent claims a specific method that requires particular constructs, *e.g.*,

'content profiles' and 'customer profiles' that are themselves made up of particular information, *i.e.*, degrees of, or relative preferences for, *predetermined characteristics*") (emphasis added). This cannot be right. As Pinpoint correctly argues, not all the asserted claims refer to "predetermined characteristics." *Compare* Def. Mem., Ex. 1 at Col. 55, Claim 17 ("creating at least one customer profile for each eligible recipient of said data, said customer profile indicating the customer's preferences for data having predetermined characteristics") *with* Claim 43 ("creating at least one customer profile for each eligible recipient of said data, said customer profile including a profile of data previously accessed by said customer"). This suggests a broader construction of customer profiles, not all solely made up of "predetermined characteristics." *Vitronics*, 90 F.3d at 1582 ("[f]irst, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope").

The specification also refutes Amazon's narrow construction. Contrary to Amazon's contention, the specification contemplates instances where a customer profile using mathematical values to indicate range is not required. Instead, the customer profile may simply indicate whether a characteristic is "liked" or "disliked." See Def. Mem. Ex. 1 at Col. 11 ("On the other hand, as in the Strubbe system, the weights could simply indicate a 'like' or 'dislike' value for each characteristic"). Accordingly, Pinpoint's broader construction, which is based on the plain and ordinary meaning of the disputed language, will be adopted. *Superguide Corp. v. DirecTV Enterprises, Inc. et al.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("dictionaries are often helpful in ascertaining the plain and ordinary meaning of claim language"). The court construes customer profile as "a set of information related to a specific customer that describes significant characteristics of the customer"; indicating the customer's preferences for data having

13

predetermined characteristics as "the customer profile points out or shows indirectly the customer's preferences for certain kinds of information or items of interest"; and predetermined as "the characteristics are established before the system practices the method claimed."

**Step 2**

The parties' dispute over construction of Step 2 mirrors their dispute over construction of Step 1. Step 2 provides for "creating content profiles for each data source of said data, said content profiles indicating the degree of content of said predetermined characteristics in data from each data source." Amazon's proposed construction of "content profiles indicating the degree of content of said predetermined characteristics in data from each data source" parallels its "customer profile" construction rejected by the court. Amazon construes this phrase to mean "a list of mathematical values indicating the degree to which predetermined characteristics that describe the contents of data are contained in the data provided by each data source."

Amazon relies on two general dictionaries, its expert witness, and the specification. As above, "profile" is defined as "a formal summary or analysis of data, often in the form of a graph or table, representing distinctive features or characteristics." Def. Mem. at 18 (quoting The American Heritage Dictionary of the English Language (4th ed. 2000)). "Content" means "the topics, ideas, facts, or statements in a book, document or letter" and "the amount of specified material contained, present or yielded." *Id.* (quoting Webster's Third New International Dictionary of the English Language Unabridged (Philip Babcock Gove et al. eds, 1993)). Amazon modifies these general definitions with reference to its expert witness' declaration: "[i]n content-based filtering, . . . a content profile of an item is a set of mathematical values representing the degree to which the item contains particular characteristics." *Id.* (citing Resnick

14

Decl. at ¶ 58). Amazon also contends the patent specification lends support by describing "content profiles" as "a collection of mathematical values representing the weighted significance of several predetermined characteristics." Def. Mem. at 19, Ex. 1, Col. 10.

Amazon's construction is not limited to the phrase "content profile." Amazon also interprets the phrase "degree of content." According to Amazon, "degree" means "a grade or point marking the attainment or existence of more or less of a quality, acquirement or aspect: [its] relative intensity." Def. Mem. at 20 (quoting Webster's Third New International Dictionary of the English Language Unabridged (Philip Babcock Gove et al. eds, 1993)). Amazon contends that "degree" cannot mean "presence," but instead signifies measurement of a certain characteristic, such as violence, on a range of 0-10. Amazon relies on the claims of the '722 patent in which presence is purportedly distinguished from degree: "said content profile indicating at least one of the *presence* and the *degree* of content of said predetermined characteristics in data of each of said data object[.]" Def. Mem. at Ex. 2, Col. 53-43, Claim 1 (emphasis added). Amazon's construction also relies on the foreign prosecution history of the '722 patent counterpart.

Pinpoint's proposed construction of "content profile" also parallels its proposed construction of "customer profile." Pinpoint construes "content profiles for each data source of said data, said content profiles indicating the degree of content of predetermined characteristics in data from each data source" as "data that describes the significant characteristics of a data source, indicating the degree to which predetermined characteristics are contained in the data from the data source." Pl. Opp. Mem. at 15. Specifically, Pinpoint contends a "content profile" is a "profile of the 'data source of said data'" and contains "information that describes the

15

significant characteristics of the item of interest." *Id.* Pinpoint uses the patent specification to support this proposed construction. Pinpoint emphasizes that the specification does not restrict "content profiles" to mathematical values or constructs, but rather includes other *non-mathematical* values not indicative of a range, such as "the director of a program, . . . the rating given to a movie by a third -party, such as the MPAA . . . [or] whether a stock is owned by a customer." *Id.* at 15-16 (citing Def. Mem. Ex. 1, Cols. 11, 51).

Pinpoint disputes Amazon's construction of "degree of content," contending that "presence is . . . a special case of degree." Pl. Opp. Mem. at 17. Pinpoint refers to the patent specification in support of this construction. *Id.* at 16, citing Def. Mem. Ex. 1, Col. 11 ("Of course, as in the Strubbe system, the values could simply be '0' or '1' to indicate the presence or absence of a characteristic"). Pinpoint refutes Amazon's claim that the '722 patent distinguishes presence from degree with reference to the prosecution history. According to Pinpoint, the inventors merely sought to clarify the claim language: "Claims 1 and 11 [of the '722 patent] have been amended to recite that the content profiles indicate either the 'degree of content' or the 'presence' of predetermined characteristics in the data." *Id.* at 17, App. 8 (AMZN 002689-90). Pinpoint argues that the foreign prosecution history actually supports its proposed claim construction of "degree of content." Specifically, the foreign examiner noted "the claim is silent as to how this 'degree' of measure is obtained. A simple on/off measure (*e.g., binary flag representing presence or absence*) is also included within the scope of these extremely broad terms." *Id.* at 18, App. 9 (AMZN 030073) (emphasis added).

Amazon's proposed construction of "content profiles" fails on the same grounds as its construction of "customer profiles." Simply put, neither the claim language nor the patent

specification supports Amazon's contention that a "content profile" is always a "mathematical construct." A comparison of the claim language of the asserted claims to the claim language of non-asserted claims is instructive. *Compare* Def. Mem. at Ex. 1, Col. 52, Claim 1 ("relating said selected customer profile with the content profiles for the data available from each data source to the customer at a particular time by determining the distance between a customer profile and a content profile in a characteristic space by calculating an agreement scalar for common characteristics, ac, between said selected customer profile, cv, and said content profiles, cp, in accordance with the relationship: . . . ") *with* Claim 43 ("relating said at least one customer profile with the content profiles for the data available from each data source to the customer"). *See Vitronics*, 90 F.3d at 1582 ("[f]irst, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope"). The patent specification also supports a construction broader than "a list of mathematical values;" neither a program director nor stock ownership is a mathematical value.

Amazon's proposed construction of "degree of content" is flawed. Contrary to Amazon's assertion, the patent specification supports a broader reading of "degree." As Pinpoint argues, the specification contemplates content profiles containing information describing the range of a particular characteristic, like violence of a particular program between 0-10, as well as information describing the presence or absence of a particular characteristic. Def. Mem. Ex. 1, Col. 13 ("Of course, other simpler techniques such as one which simply determines the presence or absence of particular characteristics may be used within the scope of the invention"). Pinpoint's construction of "degree" as including "presence" is bolstered by the specification; Amazon's unsupported construction must therefore fail. *Vitronics*, 90 F.3d at 1582 (specification

"is usually dispositive; it is the single best guide to the meaning of a disputed term"). Indeed, the specification buttresses Pinpoint's contention that adding the term "presence" to the '722 patent claims was merely for clarification purposes. Moreover, the foreign patent prosecution history actually lends itself to Pinpoint's construction. Accordingly, the court construes "creating content profiles for each data source of said data, said content profiles indicating the degree of content of said predetermined characteristics in data from each data source" as "data that describes the significant characteristics of a data source, indicating the degree to which predetermined characteristics are contained in the data from the data source."

### Step 3

Step 3 provides for "monitoring which data sources are actually accessed by each recipient." Def. Mem. at Ex. 1, Col. 55, Claim 17. Amazon asserts "monitoring" means "keeping track of and recording." *Id.* at 22. The first part of Amazon's proposed construction is taken from <u>Webster's Dictionary</u>, defining "monitoring" as "keep track of, regulate or control (as a process or the operation of a machine)". *Id.* The second part of Amazon's proposed construction is taken from the specification: "[p]referably, the monitoring function is accomplished by storing, at each customer's set top multimedia terminal, a record of the video programs actually watched by the customer." *Id.* Ex. 1, Col. 6. Pinpoint does not directly respond, but suggests in the claim chart attached to its memorandum that claim construction of this term is unnecessary. *See* Pl. Opp. Mem. Ex. 4 at 2 ("Pinpoint Construction . . . Monitoring which data sources are actually accessed by each recipient"). In the absence of any explanation supporting Pinpoint's position, the court construes "monitoring" to mean "keeping track of and recording."

18

**Step 4**

The parties dispute the proper construction of Step 4, which provides for "updating, without input from each customer, each customer profile in accordance with the content profiles of the data sources actually accessed by that customer to automatically update each customer's actual preferences for said predetermined characteristics." Amazon construes Step 4 as "modifying, without the user taking an overt action, the mathematical values forming the customer profile to agree with the mathematical values forming the content profiles of the data feeds accessed by the user to reflect the users actual relative interests in the predetermined characteristics."[5] As an initial matter, Amazon's proposed construction must fail to the extent it includes its constructions of "customer profile," "content profile," and "data sources." The court rejects these constructions. Because Amazon relies on its flawed construction of "customer profile" and "content profile" to construe the phrase "customer's actual preferences for said predetermined characteristics," that construction must too be rejected.[6] The remaining key phrase in dispute is "updating, without input from each customer."

---

[5] Amazon asserts inconsistent constructions of the claim term "updating." Amazon's claim chart construes "updating" as "modifying with current information," while Amazon's motion construes "updating" as "modifying." *Compare* Def. Mem. at 23 ("modifying with current information, without the user taking an overt action") *with* Def. Mem. at 24 ("the entire clause means . . . 'modifying, without the user taking an overt action'"). The court assumes Amazon intends the construction asserted in its motion, rather than in its claim chart.

[6] As explained above, neither "customer profile" nor "content profile" solely relate to "predetermined characteristics." Claim 43 is instructive. Both "customer profile" and "content profile" appear in the claim language, but the phrase "predetermined characteristics" is noticeably absent. Thus, Amazon may not imply "predetermined characteristics" into "customer profile" and "content profile."

Amazon asserts that "updating, without input from each customer" means "modifying, without the user taking an overt action." Amazon directs the court to a general purpose dictionary, the patent prosecution history, and its expert witness' declaration about usage in the field of art. Webster's Dictionary defines "update" as "to bring up to date." The prosecution history reveals the inventors described this updating feature as updating customer profiles "without any customer having to take any overt action such as filling out a new questionnaire or requesting that the customer profiles be updated." Def. Mem., Ex. 6 at 26 (AMZN 001679). Amazon's expert attests that the proposed construction is consistent with the understanding in the field; others have referred to this as "modification," a process that requires "modifying the weights for characteristics in the customer profile to be more like the weights for the same characteristics in the content profiles of items the user has implicitly indicated a preference for (e.g., programs watched)." Def. Mem. at 23 (citing Resnick Decl., ¶ 61).

In contrast, Pinpoint construes "updating, without input from each customer, each customer profile in accordance with the content profiles of the data sources actually accessed by that customer to automatically update each customer's actual preferences for said predetermined characteristics" as "the claimed method is able to update the customer's preferences without the customer taking direct action to tell the system how it should update the customer's actual preferences." Pinpoint agrees with Amazon's construction of "updating, without input from each customer," but proposes a different construction using "simpler language."

Pinpoint's construction is flawed in its simplicity. Its proposed construction of Step 3 fails to include many key terms, such as "customer profile," "content profile," and "predetermined characteristics." Nor may the court entirely adopt Amazon's proposed

20

construction as it relies upon rejected constructions. The court restricts claim construction of Step 3 to the phrase "updating, without input from each customer." The proper construction of this phrase is Amazon's: "modifying, without the user taking overt action." Def. Mem. at 24. Not only does Pinpoint concede that the term "modifying" properly construes the term "updating," the prosecution history provides direct support for the phrase "without the customer taking an overt action." *See* Pl. Opp. Mem. at 20 (construing the claim term "updating" in Claim 41 as "modifying"); Def. Mem., Ex. 6 at 26 (AMZN 001679) ("without any customer having to take any overt action").[7] The court construes Step 3 as "modifying, without the customer taking an overt action, each customer profile in accordance with the content profiles of the data sources actually assessed by that customer to automatically update each customer's actual preferences for said predetermined characteristics." *Vitronics*, 90 F.3d at 1582.

### '257 patent: Claim 41

The second claim disputed by the parties is Claim 41, which provides:

A method for scheduling customer access to data from a plurality of data sources, comprising the steps of:

[1] creating a customer profile for each customer of said plurality of data sources, said customer profile indicating said customer's preferences for predetermined characteristics of data sources;

[2] monitoring which data sources are actually accessed by each customer; and

[3] updating each customer profile to reflect the frequency of selection of the data sources by customers with customer profiles substantially similar to said each customer profile.

---

[7] The court substitutes the term "customer" in place of the term "user" advanced by Amazon to ensure consistency. The plain language of the '257 patent refers to the term "customer," not "user."

Def. Mem. at Ex. 1, Col. 59.[8]

**Step 3**

Step 3 provides for "updating each customer profile to reflect the frequency of selection of the data sources by customers with customer profiles substantially similar to said each customer profile." Amazon construes this to mean "modifying the mathematical values in each customer profile based on the profiles of data sources that are selected by other customers with highly similar customer profiles during a given time period."[9] Amazon's proposed construction cannot be accepted to the extent it is based upon its erroneous construction of "customer profile." Nor is there sufficient support in the record for Amazon's proposed construction of the phrase "substantially similar" as "highly similar." Contrary to Amazon's assertion, the specification does not conflate these two terms. The specification merely describes the purpose of clustering. *See* Def. Mem. Ex. 1, Col 34 ("As noted above, the purpose of clustering is to group objects with high similarity into clusters"). Nonetheless, Amazon's undisputed construction of the term "updating" is adopted. The court construes "updating each customer profile to reflect the frequency of selection of the data sources by customers with customer profiles substantially similar to said each customer profile" to mean "modifying the customer profile to reflect the frequency of selection of the data sources by customers with substantially similar customer profiles."

---

[8] The court divides claim 41 into three separate steps. The parties only dispute the proper construction of the third step.

[9] Amazon again advances differing constructions of "updating" in its demonstrative claim chart and in its motion. *Compare* Def. Mem. at 25 ("modifying with current information") *with* Def. Mem. at 26 ("modifying"). The court assumes Amazon intends the proposed construction in its motion.

### '257 patent: Claim 43

The parties dispute the proper construction of Claim 43, which provides:

A method of scheduling customer access to data from a plurality of data sources, comprising the steps of:

[1] creating at least one customer profile for each eligible recipient of said data, said customer profile including a profile of data previously accessed by said customer;

[2] creating content profiles for each data source of said data, said content profiles reflecting the customer profiles of those customers who have previously accessed said data from each data source;

[3] relating said at least one customer profile with the content profiles for the data available from each data source to the customer;

[4] determining a subset of data having content profiles which are determined in said relating step to most closely match said at least one customer profile; and

[5] presenting said subset of data to said customer for selection.

Def. Mem. Ex. 1 at Col. 59.[10]

### Step 1

The parties dispute the proper construction of Step 1, which provides "creating at least one customer profile for each eligible recipient of said data, said customer profile including a profile of data previously accessed by said customer." The key phrases in dispute are "for each eligible recipient of said data" and "said customer profile including a profile of data previously accessed by said customer."

Amazon asserts that "for each eligible recipient of said data" means "every user that is qualified to receive the data from a plurality of data sources." Amazon relies on two general

---

[10] The court divides claim 43 into five separate steps. The parties dispute the construction of claim terms in all but the fifth step.

purpose dictionaries defining "each" and "eligible" as meaning respectively "being one of two or more considered individually; every" and "qualified to be chosen or used." Def. Mem. at 27 (quoting The American Heritage Dictionary of the English Language (4th ed. 2000) and Webster's Third New International Dictionary of the English Language Unabridged (Philip Babcock Gove et al. eds, 1993)). Amazon further contends the phrase "eligible recipient" does not apply to the World Wide Web, but only to subscription-based services, such as cable television. In contrast, Pinpoint asserts claim construction is not required, and challenges Amazon's attempt to distinguish between cable television and the World Wide Web as in conflict with the patent specification. The court finds the phrase "for each eligible recipient of said data" unambiguous, and claim construction unnecessary. The court is unpersuaded by Amazon's unsupported construction of the claim term "eligible" as excluding the World Wide Web. Indeed, the patent specification indicates otherwise. *See* Def. Mem. Ex. 1, Col. 51 ("the method of . . . selecting preferred video programming . . . may be generalized for use in other types of data retrieval systems . . . such as the Internet").

Nor is Amazon's proposed construction of "said customer profile including a profile of data previously accessed by said customer" as "the customer profile is based (at least in part) on the degree of content the predetermined characteristics indicated in the profiles of data that the user previously accessed" acceptable. As Pinpoint correctly argues, the language of Claim 43 does not include the phrase "degree of content" or the phrase "predetermined characteristics." Amazon lifts this language from other asserted claims. *Compare* Def. Mem. Ex. 1, Col. 55, Claim 17 ("said customer profile indicating the customer's preferences for data having predetermined characteristics") and ("said content profiles indicating the degree of content of

24

said predetermined characteristics in data from each data source") *with* Col. 59 ("said customer profile including a profile of data previously accessed by said customer"). Amazon's proposed construction must therefore fail. Pinpoint's proposed construction is based upon the same construction of "customer profile" accepted by the court. Thus, "said customer profile including a profile of data previously accessed by said customer" is construed as, "the customer profile includes data that describes the significant characteristics of the data previously accessed by the customer."

### Step 2

The parties' dispute with respect to Step 2 parallels Step 1. Amazon relies on the concept "predetermined characteristics," which is not mentioned in the plain language of claim 43, in formulating its proposed construction. *See* Def. Mem. at 28 ("This construction makes sense because the customer profiles and content profiles are represented using the same set of *predetermined characteristics, e.g.*, descriptive attributes of movies") (emphasis added). Amazon's proposed construction therefore fails. Pinpoint solely directs the court to Merriam-Webster Dictionary for the ordinary meaning of "reflect" as "to bring as a result." Pl. Opp. Mem. at 20. Accordingly, the court construes "said content profiles reflecting the customer profiles of those customers who have previously accessed said data from each data source" as "content profiles contain data that results from the customer profiles of those customers who have previously accessed data from each data source."

### Step 3

Step 3 provides for "relating said at least one customer profile with the content profiles for the data available from each data source to the customer." Amazon's proposed construction,

"comparing the customer profile with the content profiles for the data available from each one of the data sources by comparing the corresponding values for each of the *predetermined characteristics*," fails on the same grounds as its claim construction in Steps 1 and 2. Amazon improperly narrows the claim language of Step 3 by reading the phrase "predetermined characteristics" into the claim language, despite the fact the term is conspicuously absent. In contrast, Pinpoint's proposed construction is buttressed by the ordinary meaning of the term "relating," as meaning "to show or establish a logical or causal connection between." Pl. Opp. Mem. at 22 (quoting Merriam-Webster Dictionary at 621). The court construes "relating said at least one customer profile with the content profiles for the data available from each data source to the customer" as "establishing a logical connection between the customer profile and content profiles for the available data."

## Step 4

Step 4 provides for "determining a subset of data having content profiles which are determined in said relating step to most closely match said at least one customer profile." According to Amazon, this phrase means "finding the subset of data having content profiles whose values are most similar to the values making up the customer profiles." Amazon's proposed construction is based on its expert's declaration and the patent specification. Amazon contends the phrase must be understood mathematically, with the goal of "finding the programs that have content profiles that are closest to (*i.e.*, the shortest distance from) the customers profile." Def. Mem. at 31 [citing Ex. 1, Col. 25 ("[o]nce the agreement matrix has been generated those programs with the highest values for ac, *i.e.*, the closest distance (1/ac) and hence the closest match to the customer's profile or profiles, are prioritized and selected for

presentation")]. Amazon's proposed construction is flawed. The claim language is not restricted to mathematical expressions of similarity. Rather, the claim language refers broadly to relating content profiles and customer profiles (two phrases for which the court adopts broader, non-mathematical claim constructions).

Pinpoint's citation to claims in the '257 patent with highly particularized mathematical algorithms for finding a subset of data is instructive. *Compare* Def. Mem. at Ex. 1, Col. 52, Claim 1 ("relating said selected customer profile with the content profiles for the data available from each data source to the customer at a particular time by determining a distance between a customer profile and a content profile in a characteristic space by calculating an agreement scalar for common characteristics, ac, between said selected customer profile, cv, and said content profiles, cp, in accordance with [a] relationship [determined with reference to a specific mathematical equation]") *with* Def. Mem. at Ex. 1, Col. 55, Claim 43 ("relating said at least one customer profile with the content profiles for the data available from each data source to the customer"). The non-restrictive language of Claim 43 dooms Amazon's proposed construction and counsels a broader construction. The term "match" is construed not with reference to specific mathematic algorithms, but in accord with its general definition of "a suitable pairing of persons or objects." Pl. Opp. Mem. at 23 (quoting Webster Dictionary at 455). The court construes the disputed phrase as "finding the subset of data having content profiles that comprise the most suitable pairings to the customer profile."

### ' 722 patent: Claim 1

Pinpoint alleges that Amazon infringes '722 patent claims 1, 3, 4, 6 and 7. The '722 patent, as a continuation in part of the '257 patent, contains many identical claim terms. The

claim construction adopted by the court with respect to the '257 patent therefore controls

identical claim terms in the '722 patent. *CVI/Beta Ventures v. Tura LP*, 112 F.3d 1146, 1159

(Fed. Cir. 1997); *Hemphill v. Proctor & Gamble, Co.*, 85 Fed. Appx. 765, 767 (Fed. Cir. 2004).

The parties dispute the proper construction of Claim 1, which provides:

> A method of scheduling customer access to data of a plurality of data objects, comprising the steps of:
>
> [1] creating at least one customer profile for a customer of said data, said customer profile indicating the customer's preferences for data having predetermined characteristics;
>
> [2] creating content profiles for each of said data objects, said content profiles indicating at least one of the presence and the degree of content of said predetermined characteristics in data of each of said data objects;
>
> [3] relating said at least one customer profile with the content profiles for the data available from each data object to the customer at a particular time;
>
> [4] determining a subset of data having content profiles which are determined in said relating step to most closely match said at least one customer profile; and
>
> [5] presenting said subset of data to said customer for selection.[11]

**Preamble to '722 patent**

The preamble to the '722 patent claims provides "a method of scheduling customer

access to data of a plurality of data objects, comprising the steps of[.]" Def. Mem. Ex. 1, 2, Col.

53-54. The court finds the phrase "scheduling customer access" means "selecting and/or

ordering . . . the information that will be provided to the customer." The only remaining disputed

phrase is "data objects." Amazon's proposed construction, defined with reference to purported

standard definitions in the field of digital data broadcasting, is similarly narrow to the one it

---

[11] The court divides claim 1 into five separate steps. The parties dispute the construction of claim terms in the preamble and the second and third steps.

proffered with respect to "data sources." According to Amazon, a "data object" is "a streaming data or programming element," and a "stream" is "a data object which has no specific start or end." Def. Mem. at 33 (quoting ATSC Data Broadcast Standard, at p. 10). As with "data sources," Amazon's proposed construction must be rejected as too restrictive. Amazon erroneously seeks to limit the breadth of the term "data objects" with reference to a single embodiment of the patent: broadcasting. This is improper. Pinpoint's proposed construction of "data objects," which mirrors the broad construction it advanced – and the court adopts – with respect to "data sources," is persuasive. *See* Pl. Opp. Mem. at 24 ("'data objects' are the collections of data about the items of interest and a data object represents a single collection of data about an item") (quoting IBM Dictionary of Computing at 174 as defining "data object" as "a collection of data referred to by a single name").

### Step 2

The parties' next dispute is with the claim construction of Step 2's phrase "content profiles indicating at least one of the presence and the degree of." As explained, the court accepts Pinpoint's argument that the '257 patent claim term "degree" was intended to include "presence" and that the claim term "presence" was later added to the '722 patent for clarification purposes. The court need only consider whether the disputed phrase requires that content profiles indicate *either* presence or degree (Pinpoint's proposed construction), or *both* presence and degree (Amazon's proposed construction). Def. Mem. at 33; Pl. Opp. Mem. at 25. According to Amazon, *Superguide Corp. v. Directv Enters.*, 358 F.3d 870, 886 (Fed. Cir. 2004), instructs that the phrase "at least one of" before "the presence and the degree of" requires the disputed phrase be construed to mean that *both* presence and degree are included in the content

29

profile. Amazon is mistaken. *Superguide* is inapplicable because the prosecution history

supports Pinpoint's proposed construction. Not only does file history reveal that the '722 patent

inventors explicitly asserted that the phrase meant that "the content profiles indicate *either* the

'degree of content' *or* the 'presence' of predetermined characteristics in the data," but the patent

examiner later confirmed this reading. *See* Pl. Mem. at 25-26, App. 8 (AMZN 002688); App. 11

(HH 0002402). The inventors' construction, as it appears in the prosecution history, controls.

*See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) ("an inventor . .

. may be his own lexicographer if he defines the specific terms . . . in the written description or in

the prosecution history"); *Superguide*, 358 F.3d at 888 ("lastly, we decline to enlarge the claim

scope from its plain and ordinary meaning based on the prosecution history in this case because

the '211 patentee did not clearly and explicitly define the term 'and' in the covered criteria list as

'or'). The court construes "content profiles indicating at least one of the presence and the degree

of" as "content profiles indicate either the presence or the degree of predetermined

characteristics."

### Step 3

The parties' claim construction dispute with respect to Step 3, providing "relating said at

least one customer profile with the content profiles for the data available from each data object to

the customer at a particular time" is resolved in Pinpoint's favor. *See supra,* discussion above of

'257 patent: claim 43 construction. The court construes the disputed phrase as "establishing a

logical connection between the customer profile and content profiles for the data available at a

particular time." Pl. Opp. Mem., Ex. 4 at 7.

### '722 patent: Claim 7

The parties' final claim construction dispute on the '722 patent concerns Claim 7, which provides "[a] method as in claim 1, wherein said step of creating content profiles comprises the step of including in said content profiles data reflecting the customer profiles of those customers who have previously accessed said data from each data object." The parties' dispute with respect to the phrase "including in said content profiles data reflecting the customer profiles of those customers who have previously accessed said data from each data object," is resolved in Pinpoint's favor. *See supra*, discussion above of '257 patent: claim 43 construction. Amazon's proposed claim construction in effect redrafts Claim 7 of the '722 patent to require "predetermined characteristics," as that phrase appears in Claims 17 and 41 of the '257 patent. This is improper; the phrase "predetermined characteristics" does not appear in the plain language of the claim.

### B. '939 patent

Pinpoint alleges that Amazon infringes '939 claims 1-7. As with the '257 and '722 patents, identical claim terms are used throughout '939 claims 1-7. The same construction applies to identical claim terms. *CVI/Beta Ventures v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997); *Hemphill v. Proctor & Gamble, Co.*, 85 Fed. Appx. 765, 767 (Fed. Cir. 2004).

### '939 patent: Claim 1

The parties dispute the proper construction of claim terms in Claim 1, which provides:

A method for providing a user with access to selected ones of a plurality of target objects and sets of target object characteristics that are accessible via an electronic storage media, where said users are connected via user terminals and data communication connections to a target server system which accesses said electronic storage media, said method comprising the steps of:

[1] automatically generating at least one user target profile interest summary for a user at a user terminal, each of said user target profile interest summary being indicative of ones of said target objects and sets of target object characteristics accessed by said user; and

[2] storing said at least one user target profile interest summary in a memory.

Def. Mem. Ex. 3, Col. 79, Claim 1.[12]

### Preamble

The parties dispute the construction of the preamble to '939 patent claim, which provides, in relevant part, "selected ones of a plurality of target objects and sets of target objects characteristics that are accessible via an electronic storage media." The parties agree that the inventors explicitly defined one of the main terms in the patent specification. "Target object" is defined as "an object available for access by the user, which may be either physical or electronic in nature." Def. Mem. Ex. 3, Col. 4. The parties dispute, however, whether inclusion of the phrase "accessible via an electronic storage media" places additional limitations on the phrase "target objects" as it is used in claim 1.

According to Amazon, the overall language of the disputed phrase limits the relevant "target objects" to those that are "accessible via an electronic storage media," that is only electronic objects, not physical objects. Amazon further relies upon the specification's discussion of relevant architecture to define the term "sets of target object characteristics" as referring to a "unique file that 'contains an identifying description of the target object.'" Def. Mem. at 37 (quoting Ex. 3, Col. 29). Amazon therefore construes the disputed phrase as

---

[12] The court divides claim 1 into two separate steps. The parties dispute the construction of claim terms in the preamble and the first step.

meaning "selected electronic objects and the characteristics, contained in a unique file, describing the objects, that are accessible via an electronic storage media."

In contrast, Pinpoint's proposed construction emphasizes the express definition of "target objects." According to Pinpoint, the disputed phrase is properly construed as "selected ones of a plurality of physical or electronic objects and/or sets of their characteristics available for access by the user, that are capable of being obtained, used, seen, or known, by means of electronic storage media." Pinpoint's proposed construction finds support in the patent specification, which provides examples of both physical and electronic target objects: "published articles, purchasable goods, or even other people," and distinguishes existing technology in the field of information retrieval as merely allowing users to find textual documents, as opposed to non-textual documents: used cars, products being sold, publicly traded stocks, etc. Def. Mem. Ex. 3, Col. 6, 9. The remainder of Pinpoint's proposed construction comes from a general purpose dictionary, which defines the terms "accessible" and "via," respectively as "capable of being used, seen or known: OBTAINABLE," and "by way of . . . [or] by means of." Pl. Opp. Mem. at 5 (quoting Merriam-Webster Dictionary 23 (1997)).

Amazon's proposed construction lacks merit. If the court construes the phrase "target objects" as limited by the phrase "accessible via an electronic storage media," no '939 patent claim would cover physical target objects. This is because every '939 patent claim contains the limitation "accessible via an electronic storage media." The '939 patent claims must cover physical target objects. Amazon concedes as much. *See* Def. Reply at 4 ("[t]here is no dispute that the '939 Patent purports to provide a system in which users can locate physical target objects"). Therefore, Amazon's proposed construction is untenable. The plain language and the

33

patent specification provide otherwise. *Vitronics*, 90 F.3d at 1582. The court construes the disputed phrase in accord with Pinpoint's proposed construction: "selected ones of a plurality of physical or electronic objects and/or sets of their characteristics available for access by the user, that are capable of being obtained, used, seen, or known, by means of electronic storage media."

### Step 1

The final disputed phrase is "automatically generating at least one user target profile interest summary for a user at a user terminal, each of said user target profile interest summary being indicative of ones of said target objects and sets of target object characteristics accessed by said user." Amazon narrowly construes this phrase as meaning, "creating with essentially no human input a numerical measurement constituting a summary of digital profiles of target objects that a user likes and/or dislikes representing multiple areas of interest for a user at a user terminal being indicative of both target objects and sets of target object characteristics accessed by the user." In contrast, Pinpoint's proposed construction is broader: "automatically generating a concise statement of the data that describes the significant characteristics of target objects that a user likes and/or dislikes pointing out or showing indirectly the target objects and/or sets of target object characteristics accessed by the user." As an initial matter, Amazon's proposed construction must fail to the extent it includes its proposed construction of "target objects and sets of target object characteristics." The court has rejected this construction.

The remaining disputed phrase is "target profile interest summary." The parties' dispute centers on whether the phrase "target profile interest summary" is properly construed as requiring a "numerical measurement," as Amazon contends. This term was expressly defined by the inventors; it means "a summary of digital profiles of target objects that a user likes and/or

34

dislikes." Def. Mem., Ex. 3 at Col. 4. Pinpoint's proposed construction adopts the inventors'

definition, substituting only the dictionary definitions of "summary" and "profile," that is "a

concise statement" and "[d]ata that describes the significant characteristics of a user, a group of

users, or one or more computer resources." Pl. Opp. Mem. at 7-8 (quoting Merriam-Webster

Dictionary at 725 and IBM Dictionary of Computing 534 (1994)). In contrast, Amazon restricts

the inventors' definition by adding the additional limitation that the summary be a "numerical

measurement." Amazon errs. Neither the plain language nor the *express definition* of the

specification defines the "target profile interest summary" as a "numerical measurement."

*Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ("an inventor may

choose to be his own lexicographer"). Amazon's reliance on the specification's reference to "the

user's interest" as a "numerical measurement" cannot alter this express definition. Def. Mem. at

38 (citing Ex. 3, at Col. 9). Pinpoint's proposed construction, which defines the phrase "target

profile interest summary" in accordance with the inventors' own explicit definition, is adopted.

*Teleflex*, 299 F.3d at 1313. The court construes the disputed phrase as "automatically generating

a concise statement of the data that describes the significant characteristics of target objects that a

user likes and/or dislikes pointing out or showing indirectly the target objects and/or sets of target

object characteristics accessed by the user."

August 31, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

35